In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-08-00102-CR


______________________________




JEREMY DANIEL WEHRING, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the County Court at Law #1


Gregg County, Texas


Trial Court No. 2007-5043




 




Before Morriss, C.J., Carter and Moseley, JJ.


Opinion by Justice Carter



O P I N I O N



 Jeremy Daniel Wehring was charged with the misdemeanor offense of driving while
intoxicated (DWI). Alleging that the initial traffic stop for failure to use a turn signal in a right-turn-only lane was illegal, Wehring filed a motion to suppress the evidence related to the DWI charge. 
A hearing resulted in the denial of the motion to suppress, and this appeal ensued. The sole question
on appeal is whether Section 545.104 of the Texas Transportation Code requires a driver to
continuously signal his or her intent to turn for no less than the last 100 feet before the turn, even
when pulling into a turn-only lane. Because we decide the plain reading of Section 545.104 requires
a driver to use a turn signal in such a circumstance, we find the traffic stop was proper and affirm
the judgment of the trial court. 

I. Factual Background 

 Sergeant Benjamin Thomas Kemper was patrolling southbound on McCann Road when he
observed a black truck driven by Wehring exceeding the speed limit. Because he did not have a
radar unit that could register the vehicle's speed, Kemper continued to follow the truck until he
observed Wehring stop at an intersection in a right-turn-only lane and make the right turn without
using a traffic signal. Believing that Wehring's failure to signal intent to turn "continuously for not
less than the last 100 feet" was a violation of Section 545.104 of the Texas Transportation Code,
Kemper initiated a traffic stop that resulted in a DWI arrest. See Tex. Transp. Code Ann.
§ 545.104 (Vernon 1999). 

 Arguing that the traffic stop violated his "rights as guaranteed him under both the federal and
state constitutions and under state statutes," Wehring filed a motion to suppress all evidence related
to the DWI offense. Based on the plain reading of Section 545.104 of the Texas Transportation
Code, which requires a driver to "indicate an intention to turn" by signaling "continuously for not
less than the last 100 feet of movement of the vehicle before the turn," and noting no exception in
the statute for drivers entering a turn-only lane, the trial court concluded the traffic stop was proper
and denied the motion to suppress. 

II. Standard of Review

 A trial court's decision to grant or deny a motion to suppress is generally reviewed under an
abuse of discretion standard. Oles v. State, 993 S.W.2d 103, 106 (Tex. Crim. App. 1999); Villarreal
v. State, 935 S.W.2d 134, 138 (Tex. Crim. App. 1996); Maysonet v. State, 91 S.W.3d 365, 369 (Tex.
App.--Texarkana 2002, pet. ref'd). We will review de novo the legal question involving
interpretation of the Texas Transportation Code. Hernandez v. State, 957 S.W.2d 851 (Tex. Crim.
App. 1998); Maysonet, 91 S.W.3d at 369. Since all evidence is viewed in the light most favorable
to the trial court's ruling, we are obligated to uphold it on a motion to suppress if that ruling was
supported by the record and was correct under any theory of law applicable to the case. State v.
Ross, 32 S.W.3d 853, 856 (Tex. Crim. App. 2000); Carmouche v. State, 10 S.W.3d 323, 327 (Tex.
Crim. App. 2000); State v. Ballard, 987 S.W.2d 889, 891 (Tex. Crim. App. 1999); Maysonet, 91
S.W.3d at 369.

III. Analysis

 A routine traffic stop closely resembles an investigative detention. Berkemer v. McCarty,
468 U.S. 420 (1984). Because an investigative detention is a seizure that implicates the United
States and Texas Constitutions, the traffic stop must be reasonable. U.S. Const. amend. IV; Tex.
Const. art. I, § 9; Francis v. State, 922 S.W.2d 176, 178 (Tex. Crim. App. 1996). To determine the
reasonableness of an investigative detention, we apply the guidelines set out by the United States
Supreme Court in Terry v. Ohio: (1) whether the officer's action was justified at its inception; and
(2) whether it was reasonably related in scope to the circumstances that initially justified the
interference. 392 U.S. 1, 19-20 (1968); Davis v. State, 947 S.W.2d 240, 242 (Tex. Crim. App.
1997). 

 Under the first guideline, an officer's reasonable suspicion justifies an investigative detention. 
Davis, 947 S.W.2d at 242-43. Specifically, the officer must have a reasonable suspicion that some
activity out of the ordinary is occurring or has occurred. Id. at 244 (citing Garza v. State, 771
S.W.2d 549, 558 (Tex. Crim. App. 1989)). To determine whether an officer was reasonable in his
or her initial action, we ask whether, in light of the officer's experience and knowledge, there existed
specific, articulable facts which, taken together with rational inferences from those facts, reasonably
warranted an intrusion. Id. at 242. "If an officer has a reasonable basis for suspecting that a person
has committed a traffic offense, the officer may legally initiate a traffic stop." Zervos v. State, 15
S.W.3d 146, 151 (Tex. App.--Texarkana 2000, pet. ref'd). 

 Here, Kemper believed Wehring's failure to signal intent to turn "continuously for not less
than the last 100 feet" was a violation of Section 545.104 of the Texas Transportation Code. The
parties have asked us to interpret the statute to determine whether it was reasonable for Kemper to
conclude that a traffic violation had been committed, even though Wehring's failure to signal
occurred in a turn-only lane. 

 When interpreting statutes, we seek to effectuate the intent or purpose of the legislators who
enacted them. Omaha Healthcare Ctr., L.L.C. v. Johnson, 246 S.W.3d 278, 282 (Tex.
App.--Texarkana 2008, pet. filed) (citing Fitzgerald v. Advanced Spine Fixation Sys., Inc., 996
S.W.2d 864, 865 (Tex. 1999)). If the statute is clear and unambiguous, the plain meaning of the
words should be applied. Hines v. State, 75 S.W.3d 444, 447 (Tex. Crim. App. 2002); Boykin v.
State, 818 S.W.2d 782, 785 (Tex. Crim. App. 1991); Johnson, 246 S.W.3d at 282. However, if
application of the plain language would lead to absurd consequences the Legislature could not have
intended, we may look to extra-contextual factors to arrive at a sensible interpretation of the statute. 
Hines, 75 S.W.3d at 447; Boykin, 818 S.W.2d at 785-86.

 Section 545.104 of the Texas Transportation Code provides in part:

 (a) An operator shall use the signal authorized by Section 545.106 to
indicate an intention to turn, change lanes, or start from a parked position.

 

 (b) An operator intending to turn a vehicle right or left shall signal
continuously for not less than the last 100 feet of movement of the vehicle before the
turn.


 The plain language of the statute requires the driver to signal for a turn. It does not include
exceptions for those situations in which there is only one direction to turn. We cannot say that
requiring the use of a turn signal while entering a turn-only lane and making the turn would lead to
absurd results. See Williams v. State, No. 05-02-00314-CR, 2002 WL 31521373, at *2 (Tex.
App.--Dallas Nov. 14, 2002, no pet.) (holding Section 545.105 requires driver use turn signal in
turn-only lane). It has been held that Section 545.104 provides a "bright-line rule by which drivers
of motor vehicle and police officers charged with enforcing the laws may operate. If a turn is made
from one street onto another, a signal is required." Id. (citing King v. State, 86 S.W.3d 764, 2002
WL 1981399, at *3 (Tex. App.--El Paso 2002, no pet.)) (Section 545.104 applies anytime turn made
and not limited to situations in which driver turns at intersections or turning around near curve or
grade.). (1)

 Nevertheless, Wehring contends that the Texas Court of Criminal Appeals previously
decided that a turn signal was not required in a right-turn-only lane in State v. Dixon, 206 S.W.3d
587 (Tex. Crim. App. 2006). In that case, officers testified that they waited 3.2 miles to pull Dixon
over after they first observed him make a right turn from a right-turn-only lane without a signal. Id.
at 588. Consent to search the vehicle was given, and officers found methamphetamine on Dixon's
passenger. Id. The trial court granted Dixon's motion to suppress based on a finding that the officers
did not make the traffic stop within a reasonable distance after the alleged violation and that the turns
made were lawful. Id. at 598-90. "It is clear from the hearing that the trial judge simply did not
believe that the driver in this case committed a traffic offense by making a turn from a designated
turn lane without using a signal." Id. at 590. The trial judge stated,

 Even though they may be testifying they stopped him for a traffic offense, the court's
not bound by that. . . . It seems to me that the traffic stop, if the facts you recite are
correct and he made two turns from dedicated turn lanes on the light, I would not
think that there was any valid traffic stop.


Id. at 590-91. The Texas Court of Criminal Appeals decided that it was within the trial court's
discretion to decide whether the court believed the officers' claim that they pulled Dixon over for a
traffic offense. Id. at 591. According to the Texas Court of Criminal Appeals, 

 It is also clear that the trial court did not believe the officers' allegations that they
pulled Appellee over because he committed a traffic offense. The fact that they
waited for over three miles after the alleged violation to stop Appellee diminishes the
credibility of their claim that they stopped him for an unlawful turn . . . the trial judge
was in effect saying, "If you really thought the driver had committed a traffic offense,
then why did you wait so long before pulling him over?"


Id. 

 We, along with our sister courts of appeals, disagree that the holding in Dixon was to
disregard the plain meaning of Section 545.104, and to interpret that that section does not require
a turn signal. Turner v. State, 261 S.W.3d 129, 131 (Tex. App.--San Antonio 2008, no pet.). First,
the Texas Court of Criminal Appeals deferred to the trial court's finding. Thus, statutory
interpretation, which is an issue of law, was not being decided by the Texas Court of Criminal
Appeals because deference to a trial court's decision is not required on legal matters. Second, the
record puts into question whether the trial court even believed testimony that a turn signal was not
used. In other words, the trial court was entitled to determine that Dixon used a turn signal and that
officers did not "really [think] the driver had committed a traffic offense." Dixon, 206 S.W.3d at
590. 

 In sum, in failing to signal his intent to turn when entering the turn lane, and when actually
making the right turn, Wehring committed a traffic violation. (2) When a traffic offense is committed
in the presence of a peace officer, the detention is reasonable. Garcia v. State, 827 S.W.2d 937, 944
(Tex. Crim. App. 1992). Kemper was, therefore, authorized to detain Wehring. Thus, the evidence
related to the DWI, gathered after the lawful traffic stop, was not required to be suppressed. (3) 

IV. Conclusion

 Because we find Wehring committed a traffic violation by failing to indicate his intent to turn
in a turn-only lane, we agree with the trial court that the traffic stop was valid. The trial court's
decision to deny the motion to suppress based on the argument that the traffic stop was illegal is
affirmed. 



 Jack Carter

 Justice


Date Submitted: December 30, 2008

Date Decided: December 31, 2008


Publish


1. There is no contention that this turn was anything other than a full ninety-degree turn;
therefore, we will not address the conflict of opinion on whether exit-lane turns from a freeway
require a signal. Compare Trahan v. State, 16 S.W.3d 146 (Tex. App.--Beaumont 2000, no pet.)
(no turn or lane change necessary to exit freeway; thus statute does not apply) with Reha v. State, 99
S.W.3d 373, 375-76 (Tex. App.--Corpus Christi 2003, no pet.) (any turn, no matter the degree,
requires use of turn signal under statute).
2. The record reflects that the arrows for the turn lane were located only fifty feet from the
intersection. Presumably then, Wehring was required to indicate his intent to turn fifty feet before
the arrows indicating the street lane was a turn-only lane. 
3. We also note the record references that Wehring was speeding. Kemper could have also
initiated the traffic stop on this basis despite the absence of his radar gun. See Talamantez v. State,
No. 04-04-00622-CR, 2006 Tex. App. LEXIS 1383, at *1 (Tex. App.--San Antonio Feb. 22, 2006,
no pet.) (mem. op., not designated for publication).