**Fred Leon MITCHELL, Jr., Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 3–90–111–CR.**

Court of Appeals of Texas,
Austin.

Dec. 18, 1991.

Rehearing Overruled Jan. 15, 1992.

Discretionary Review Refused
April 15, 1992.

Bruce N. Smith, Beaumont, for appellant.

Sally Ray, Asst. Dist. Atty., Georgetown, for appellee.

Before CARROLL, C.J., and ABOUSSIE and KIDD, JJ.

PER CURIAM.

A jury found appellant guilty of driving while intoxicated, third offense. Tex.Rev. Civ.Stat.Ann. art. 6701*l*–1(e) (Supp.1991).

The jury found that another person suffered serious bodily injury as a direct result of the offense, and assessed punishment at imprisonment for five years and a $2500 fine. Art. 6701*l*–1(f). The jury also made an affirmative finding that appellant used a deadly weapon, the automobile, during the commission of the offense.

Appellant contends that the indictment did not allege a felony offense and that the district court was without jurisdiction as a consequence. We agree, and sustain the first point of error. Appellant's other points of error challenge the adequacy of the notice of a possible affirmative finding and the admissibility of a blood test result. We find these points of error to be without merit.

On the afternoon of September 17, 1989, appellant lost control of his automobile while driving at a speed of approximately 80 miles-per-hour. The vehicle left the road, struck an elevated concrete drainage culvert, became airborne, flipped over, returned to the ground, flew into the air once again, and finally came to rest against a fence. One of the passengers in the car, appellant's three-year-old son, suffered massive injuries, including the rupture of his intestines and paralyzing spinal damage. The other passenger sustained numerous broken bones. A blood test indicated that appellant had an alcohol concentration of 0.25.

*Jurisdiction*

Driving while intoxicated is punishable by imprisonment, and hence is a felony,

"[i]f it is shown on the trial of an offense under this article that the person has previously been convicted two or more times of an offense under this article ...." Art. 6701*l*–1(e). The indictment in this cause alleged that appellant had three previous DWI convictions: in Wake County, North Carolina; in Durham County, North Carolina; and in Bell County, Texas. Before trial, the Durham County allegation was waived by the State.

Appellant moved to quash the indictment on the ground that the North Carolina convictions could not be used to enhance this offense to a felony pursuant to art. 6701*l*–1(e). Thus, urged appellant, the indictment did not allege a felony offense and the district court was without jurisdiction. After a hearing, the motion was overruled.

■ Appellant argues that a previous conviction for "an offense under this article" means a previous conviction for an offense under art. 6701*l*–1. This is the most obvious and straightforward reading of the phrase. Nevertheless, the State urges that the statutory language should be understood to mean a previous conviction for "an offense defined by this article," and should not be limited to Texas prosecutions as long as the elements of the out-of-state offense constitute an offense defined by art. 6701*l*–1. This is a question of first impression.

■ The phrase "an offense under this article" appears repeatedly in art. 6701*l*–1.[1]

---

1. Article 6701*l*–1 provides, in pertinent part:

(c) Except as provided by Subsections (d), (e), and (f) of this article, *an offense under this article* is punishable by....

(d) If it is shown on the trial of *an offense under this article* that the person has previously been convicted one time of *an offense under this article*, the offense is punishable by....

(e) If it is shown on the trial of *an offense under this article* that the person has previously been convicted two or more times of *an offense under this article*, the offense is punishable by....

(f) If it is shown on the trial of a person punished for *an offense under* Subsection (c), (d), or (e) of *this article* that the person committed the offense and as a direct result of the offense another person suffered serious bodily injury.... If it is shown on the trial of a person punished for *an offense under this article* that the person committed the offense and at the time of the offense the person operating the motor vehicle had an open container....

(g) For the purposes of this article, a conviction for an offense under Article 6701*l*–1 or 6701*l*–2, Revised Statutes, as those laws existed before January 1, 1984, is a conviction of *an offense under this article.*

....

(j) On conviction of *an offense under this article* or an offense under Subdivision (2), Subsection (a), Section 19.05, Penal Code, the court shall impose a cost of $15 on a defendant if....

In subsections (c), (f), (g), (j), (m), and (n)(1), and as it is first used in subsections (d) and (e), the phrase obviously refers to an offense under art. 6701*l*–1. It logically follows that when the phrase appears the second time in subsections (d) and (e), in the reference to previous convictions used to enhance, it also refers to an offense under art. 6701*l*–1. Surely, when a phrase appears twice in the same sentence it carries the same meaning each time. By using precisely the same words used elsewhere in the statute to refer to offenses under art. 6701*l*–1, subsections (d) and (e) plainly require that the previous convictions used to enhance be convictions under art. 6701*l*–1.

If any conviction based on conduct that would be an offense under art. 6701*l*–1 could be used to enhance, as the State argues, subsection (g) would be superfluous. Subsection (g) serves a purpose only if subsections (d) and (e) are understood to require that the previous convictions used to enhance be convictions under art. 6701*l*–1.

■ In its brief, the State vigorously asserts that its reading of the statute better serves the public interest. That may be true. But where a statute is clear and unambiguous, the legislature must be understood to mean what it has expressed, and it is not for the courts to add or subtract from the statute. *Boykin v. State*, 818 S.W.2d 782 (Tex.Crim.App.1991); *Ex parte Davis*, 412 S.W.2d 46, 52 (Tex.Crim.App.1967). It is constitutionally permissible for a court to depart from the plain language of a statute only if necessary to avoid an absurd result. *Boykin*, 818 S.W.2d at 785. Reasonable people may question the wisdom of limiting the application of the enhancement provisions of art. 6701*l*–1, but the result cannot be characterized as absurd. The State's policy arguments must be addressed to the legislature.

Although we base our holding on the plain language of the statute, we note that art. 6701*l*–2, as it read prior to the revision of the DWI statutes effective January 1, 1984, and its predecessor statute, 1925 Tex.Penal Code art. 802b, required that the previous conviction used to enhance the offense to a felony be for an offense committed "in this state." Thus, in requiring that the previous convictions be for an offense under art. 6701*l*–1, subsections (d) and (e) are consistent with prior law.

■ Appellant's first point of error is sustained. Because the indictment alleged only one previous conviction under art. 6701*l*–1, it alleged the misdemeanor of driving while intoxicated, second offense. Art. 6701*l*–1(d). The district court did not have jurisdiction of this offense. Tex.Code Crim.Proc.Ann. art. 4.05 (Supp.1991). The district court never acquired jurisdiction, and was required by law to transfer the indictment to a court having misdemeanor jurisdiction. Tex.Code Crim.Proc.Ann. art. 21.26 (1989). As a result, we must reverse the judgment of conviction and remand the cause to the district court for transfer to a court having jurisdiction of the misdemeanor offense. *Ex parte Jones*, 682 S.W.2d 311 (Tex.Crim.App.1984); *Harris v. State*, 565 S.W.2d 66 (Tex.Crim.App.1978).[2]

### Other Points of Error

■ We will address appellant's other points of error, as they will recur on retrial. First, appellant contends that he was not properly notified that the State would request an affirmative finding that he used a deadly weapon during the commission of the offense. If the State intends to request an affirmative finding, it must give

(m) On conviction of *an offense* punishable *under* Subsection (c) of *this article*, the court shall impose as a cost of court on the defendant....
(n)(1) If a person commits *an offense under this article*, and as a direct result of the offense the person causes an incident resulting in an accident response by a public agency....
(Emphasis added.)

2. In his motion to quash, appellant asked the district court to set aside the indictment. Because the indictment did allege an offense, the proper relief was to transfer the cause to a court with jurisdiction. Appellant's failure to request the proper relief is of no consequence, as the lack of subject-matter jurisdiction cannot be waived. 16 Tex.Jur.3d, *Courts* § 44 (1981).

the accused notice in some form that the use of a deadly weapon will be a fact issue at trial. *Ex parte Patterson,* 740 S.W.2d 766 (Tex.Crim.App.1987).

The indictment contains a paragraph alleging that at the time he committed the charged offense, appellant "used and exhibited a deadly weapon, namely an automobile, during the commission of and during the immediate flight therefrom." Appellant argues that this notice was not sufficient, because the paragraph does not allege the manner and means by which the automobile became a deadly weapon. He cites no pertinent authority in support of this contention.

Assuming without deciding that an allegation of the manner and means of the automobile's use was necessary to give adequate notice under *Patterson,* the indictment in this cause passes muster. The indictment alleges that appellant "did cause serious bodily injury to Fred Leon Mitchell, III, a passenger in the vehicle, by causing the motor vehicle to collide with a fixed object." This was adequate to inform appellant of the manner by which the automobile became a deadly weapon. Indeed, this alone was adequate notice of the deadly weapon issue. *Gilbert v. State,* 769 S.W.2d 535, 536 (Tex.Crim.App.1989); *see also Grettenberg v. State,* 790 S.W.2d 613 (Tex. Crim.App.1990). Point of error two is overruled.

■ Appellant's last point of error is that the trial court erred by overruling his motion to suppress the result of the chemical analysis of appellant's blood. Appellant first urges that the State failed to establish that the blood sample was taken in conformity to Tex.Rev.Civ.Stat.Ann. art. 6701*l*-5, § 3(c) (Supp.1991). Section 3(c), as it then read, required that blood samples "be taken in a sanitary place, and such place, if other than the office or place of business of a licensee of the Texas State Board of Medical Examiners, must be inspected on a periodic basis by an agency of the state or by the county in which the sample is taken."[3]

The blood sample was taken in the emergency center at Brackenridge Hospital in Austin on September 17, 1989. The registered nurse who drew the sample testified that the emergency center is a sanitary place and the place of business for doctors licensed by the Board of Medical Examiners. Section 3(c) was satisfied. Appellant's argument that the State was required to prove that the hospital was periodically inspected is based on the text of the statute as it read before its amendment effective June 15, 1989. *See* 1987 Tex.Gen.Laws, ch. 591, § 1, at 2316; 1989 Tex.Gen.Laws, ch. 963, § 1, at 4040.

■ Next, appellant urges that the State did not prove the predicate for taking an involuntary blood sample under Tex.Rev. Civ.Stat.Ann. art. 6701*l*-5, § 3(i) (Supp. 1991). Section 3(i) states that a peace officer "shall require a person to give a specimen" if: (1) the officer arrests the person for an offense under art. 6701*l*-1 or Tex.Penal Code Ann. § 19.05(a)(2) (1989); (2) the person was the operator of a motor vehicle involved in an accident that the officer reasonably believes occurred as a result of the offense; (3) at the time of the arrest the officer reasonably believes that a person has died or will die as a direct result of the accident; and (4) the person refuses the officer's request to voluntarily give a specimen.

Department of Public Safety Officer Douglas Vance investigated the accident. When he arrived at the scene, appellant was still sitting behind the steering wheel, in his seat belt. Appellant had about him a strong odor of alcoholic beverage. The child had been removed from the vehicle and was being attended by emergency personnel. He was not moving, and was drifting in and out of consciousness. In light of the child's appearance and the information he received from the medical attendants, and based on his previous experience investigating traffic accidents, Vance concluded that the child was in critical condition and near death. Vance radioed this informa-

---

**3.** Effective August 26, 1991, § 3(c) was amended to require only that the blood sample be taken in a sanitary place. 1991 Tex.Sess.Law Serv., ch. 148, § 1, at 737.

tion to Austin, and asked that a blood sample be taken from appellant upon his arrival at the hospital.

Acting on the information received from Vance, Department of Public Safety Officer Peter Heller went to Brackenridge Hospital and obtained the blood sample. Heller approached appellant, who was lying on a stretcher, and asked him if he was the driver in the accident. Appellant turned his eyes away from the officer and closed them. Heller then read to appellant a document indicating that the officer was there to obtain a blood specimen and that appellant was under arrest for an offense under art. 6701*l*–1 or Penal Code § 19.05(a)(2). Appellant did not respond. Heller concluded that appellant would not voluntarily agree to give the blood sample.

Based on the information he received from Vance, Heller had probable cause to arrest appellant for driving while intoxicated, and his testimony establishes that he did so before obtaining the blood sample. Further, Heller could reasonably believe, based on this information, that an accident had occurred as a result of this offense and that a person injured in the accident was likely to die. Heller was also justified in believing, based on appellant's conduct at the hospital, that appellant did not voluntarily consent to giving a blood sample.[4] The blood sample was lawfully obtained pursuant to § 3(i). The third point of error is overruled.

The judgment of conviction is reversed. The cause is remanded to the district court with the instruction to transfer the cause to a court having misdemeanor jurisdiction.

---

4. Strictly speaking, § 3(i)(4) adds nothing to the statute. If a person voluntarily consents to an officer's request for a blood or breath sample, the officer need not resort to his authority under § 3(i). On the other hand, if the conditions specified in § 3(i)(1), (2), and (3) are satisfied, the absence of consent is irrelevant. In this cause, the State relied on § 3(i) because appellant objected that the blood sample had been taken involuntarily.